James A. Dumas (SBN 76284)
Christian T. Kim (SBN 231017)
DUMAS & KIM, APC
3435 Wilshire Blvd., Ste. 990
Los Angeles, CA 90010
Telephone: 213/368-5000
Facsimile: 213/368-5009
Email: jdumas@dumas-law.com;
ckim@dumas-law.com

Attorneys for the Chapter 7 Trustee,
Carolyn A. Dye

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>TEMPLE, CB, LLC<br><br>Debtor. | Case No.: 2:17-bk-10301-BR<br><br>Adversary No.:<br><br>[Honorable Barry Russell] |
| CAROLYN A. DYE, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>JAY HOOPER; an individual; CROWN LABORATORY, INC., a California corporation, and DOES I through XV.<br><br>Defendants. | **COMPLAINT TO ENFORCE PROMISSORY NOTE; FOR ACCOUNT STATED; TO AVOID FRAUDULENT TRANSFERS AND INSIDER PREFERENCES; FOR BREACH OF FIDUCIARY DUTY**<br><br>[11. U.S.C. §§ 105, 541, 542, 547, 548, and 28 U.S.C. §157, and California Civil Code **Sections 3439 et seq.**] |

COMES NOW, Plaintiff and Chapter 7 Trustee Carolyn A. Dye ("Trustee" or "Plaintiff"), as and for his Complaint herein, complains and alleges as follows:

////

////

1

I.

## THE PARTIES AND JURISDICTION

1.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157, and this is a core proceeding under 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), or 157(b)(2)(E). In the event this proceeding is determined to include non-core claims for relief, the Plaintiff consents to the entry of a final order or judgment by the Bankruptcy Court as to any such claims. Venue in the Central District of California, Los Angeles Division (the "Bankruptcy Court"), is proper pursuant to 28 U.S.C. § 1409 in that this adversary proceeding is related to the bankruptcy case of Temple CB, LLC bearing case number Case No.: 2:17-bk-10301-BR, presently pending under Chapter 7 of Title 11 of the United States Code in the Bankruptcy Court. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 because this is a civil proceeding arising in and/or related to the debtor, Temple CB, LLC, and its Chapter 7 case.

2.  The Plaintiff Carolyn A. Dye is the duly appointed and acting Chapter 7 bankruptcy trustee for the estate of Temple CB, LLC ("Debtor").

3.  Defendant Jay Hooper ("Hooper"), has, all times relevant herein, been the 100% owner and "CEO" of the Debtor.

4.  Defendant Crown Laboratory, Inc. ("CLI") is a corporation organized under and existing pursuant to the laws of the State of California. Hooper has testified that he is the 100% owner of CLI and he is the only person who has been identified as an officer of the company.

5.  Plaintiff is informed and believes, and on that basis alleges, that Hooper has managed the affairs of CLI without regard to its separate legal existence and without compliance with necessary corporate governance procedures. Hooper has used the assets of the CLI as if they were his own. The corporation was formed with a capitalization that was utterly inadequate in relation to the

business transactions it could anticipate it would undertake and since then it has remained woefully undercapitalized in relation to its potential liabilities. Plaintiff is informed and believes that to the extent that CLI has had any assets, they have been fraudulently transferred to Hooper and/or persons or entities under his control and that CLI is today insolvent and without assets that can be liquidated. Adherence to the separate corporate existence of CLI would sanction a fraud upon plaintiff and other the creditors of CLI. There is a unity of interest between Hooper and CLI, such that CLI is a mere *alter ego* of Hooper and Hooper should be responsible for its debts.

6. Plaintiff does not know the true names and capacities of the defendants sued herein by the fictitious names DOES I-XV, inclusive, and plaintiff therefore sues those defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.

7. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiffs' damages as alleged were caused by the acts and or omissions of such defendants and each of them.

8. Debtor Temple CB, LLC commenced the within bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on January 10, 2017 ("Petition Date"). The case was converted to a case under Chapter 7 by an order entered March 17, 2017.

## II.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

9. Plaintiff refers to the allegations set forth in paragraph 1 through 8 hereof and incorporates said allegations herein as if fully set forth hereat.

10. The Debtor was first formed on November 13, 2012 for the purpose of acquiring and

developing a parcel of real property located at 4350 Temple City Boulevard in El Monte, California (the "Temple property"). The Temple property was purchased from a company known as Continental Business Credit ("CBC") on November 26, 2012 for the sum of $2,300,000, with the debtor paying a $618,393 down payment and CBC taking back a second mortgage for $1,720,000.

11. The Temple property had an existing structure on it. Although little was done to repair or upgrade this structure, and the property derived negligible income, by 2015 it had increased in value and the Hooper seized the opportunity to draw money out of it. On July 31, 2015, a second deed of trust was recorded against the property in favor of a company known as Evergreen Advantage ("Evergreen") to secure a loan of $1,273,000. Then on March 31, 2016, a $4.5 million trust deed in favor of Evergreen was recorded to secure a new loan which paid off the existing Evergreen and CBC liens and yielded further substantial net loan proceeds. On April 1, 292 days before the bankruptcy filing, $1,636,560 in these proceeds were paid to the debtor's checking account at Bank of America. In addition to this secured borrowing, in 2015 and 2016 the debtor borrowed a further $932,000 in unsecured loans. The trustee is informed and believes, and on that basis alleges, that the total loan proceeds obtained by the debtor, net of existing debt, on these secured and unsecured loans from July, 2015 through the end of 2016 was approximately $3.5 million. There is no evidence that more than a small portion of this $3.5 million was used either to pay off non-insider corporate indebtedness or corporate expenses. In fact, it was not even used to pay the debt service on the loans. In spite of having received $1,636,560 in net loan proceeds from the second Evergreen loan at the beginning of April, 2016, the debtor did not make a single monthly payment on this $4.5 million loan and starting in May, 2016, a month after the loan was disbursed, it began to incur a default interest rate on the loan of 18.9%. No portion of any of these secured and unsecured loans proceeds were available to the debtor at the time of the January, 2017 bankruptcy filing in 2017 when, according to its Schedule of Property, it had two bank accounts, one at Bank of America (account no. 3906) and another at Chase Bank (account no. 6705) with a total of $1,528 in deposits. Hooper has not adequately accounted to the trustee for his disposition of these $3.5 million in loan proceeds.

12. Environmental issues created by past industrial use were the primary reason that the

COMPLAINT ON PROMISSORY NOTE; ACCOUNT STATED; TO AVOID FRAUDULENT TRANSFEERS AND INSIDER PREFERENCES; FOR BREACH OF FIDUCIARY DUTY

debtor was unable to fully utilize or exploit the Temple property. The property required substantial remediation and plaintiff trustee is informed and believes that over the course of the debtor's ownership of the property some amount of remediation and/or improvements to the property were made. However, available financial records indicate that the great majority of the funds that were borrowed in 2015 and 2016 were used for purposes unrelated to the property, including importation of consumer products from China. Hooper initially conducted a separate import business through the debtor and in the year 2014 the debtor had booked $3,154,000 in gross receipts from it. However, in December, 2014, CLI was formed and starting in 2015 Hooper conducted the import business through CLI, such that in 2015 the debtor had only $381,600 in gross receipts and in 2016 only $24,000.

        13.     At the beginning of January, 2016, the debtor had $370,915 in its checking account no. 3906 at Bank of America and over the course of that month another $122,000 was deposited. On January 4, 2016, $350,000 of these funds were wired to an account at Hang Seng Bank in China for the benefit of a company known as New Eastern, Inc., Ltd ("New Eastern"). New Eastern was either a company controlled by Hooper or a company with whom he, CLI, and/or Does I through X, were transacting business. On April 1, 2016, the $1,636,560 in proceeds from the Evergreen loan were wired to the Bank of America account. Over the next two weeks, $500,000 of these funds were wired to Nanyang Commercial Bank in China for the benefit of a company known as Dinhor Investment Limited ("Dinhor"). Again, the trustee is informed and believes that Dinhor is either a company controlled by Hooper or a company with whom he, CLI, and/or Does I through X were transacting business. A further $133,280 was wired to other parties in China, $130,000 was transferred to other accounts at Bank of America controlled by Hooper, and another $382,454 was disbursed through checks to parties unknown, including one check for $200,000. In May, 2016, another $300,000 was transferred to other bank accounts at Bank of America controlled by Hooper, such that by May 20, 2016, the balance in account 3906 was only $10,642. None of these transfers show up as expenses of the debtor on its 2016 tax return, such that they can all be presumed to be unrelated to the debtor's business operations and at best were loans to the Hooper and/or entities controlled by him such as CLI and Does I through XV or to other persons.

COMPLAINT ON PROMISSORY NOTE; ACCOUNT STATED; TO AVOID FRAUDULENT TRANSFEERS AND INSIDER PREFERENCES; FOR BREACH OF FIDUCIARY DUTY

14.     In its Schedule of Property in the within bankruptcy, Hooper testified on behalf of the debtor that it had a note receivable from CLI in the sum of $1,368,630. It is unclear whether an actual promissory note exists and, in any event, none has been produced. While the precise repayment terms are unknown, Hooper's testimony both in the Schedule of Property and at the 341a meeting of creditors is that this entire sum was due and owing as of the Petition Date. At the 341a meeting of creditors Hooper testified that this alleged note receivable was with respect to a loan that the debtor had made to CLI. He said that CLI was wholly owned by him and that it used the loan to purchase electronic consumer goods from China that it intended to import into the United States. Allegedly due to problems at U.S. customs, it was unable to bring the merchandise into the United States and the goods were diverted to Mexico where they were stored in a warehouse. Hooper testified further that, due to a dispute that CLI proceeded to have with the owner of the warehouse, it has been unable to access the goods. As a consequence, CLI has allegedly been unable to repay its loan to the debtor. In spite of requests therefor, the trustee has not been provided any documentary evidence which supports any portion of this testimony and, even it were true, it does not fully account for the $1,795,734 that was disbursed from the debtor's bank account at Bank of America from January through May, 2016.

15.     The books and records of the debtor do not reflect that it had any initial capitalization although it does reflect a shareholder loan. This alleged loan would necessarily have been from Hooper, the debtor's 100% owner. The alleged balance of the loan at the beginning of 2015 was $704,476. The balance had allegedly been reduced to $166,976 by the end of the year. A further $71,318 was allegedly paid on the loan in 2016, within a year of the bankruptcy filing, such that at the end of 2016, the balance was $95,658. It is unknown whether any further payments were made prior to the January 17, 2017 bankruptcy filing. Hooper did not schedule any debt owed to him by the debtor in the bankruptcy schedules nor, when asked about distributions to insiders in the year preceding the bankruptcy, was there disclosure of any payments made to him. He has not filed a proof of claim in the bankruptcy.

16.     The debtor routinely paid Hooper's personal credit card debt and just in the year preceding the bankruptcy filing those payments totaled at least $130,000. The trustee is informed and

believes that these payments were on account of Hooper's personal expenses, rather than legitimate expenses of the debtor.

### III.

### FIRST CLAIM FOR RELIEF

### (To Enforce Promissory Note)

### (Against Defendants CLI and Hooper)

17. Plaintiff refers to the allegations set forth in paragraph 1 through 16 hereof and incorporates said allegations herein as if fully set forth hereat.

18. Plaintiff is informed and believes, and on that basis alleges, that CLI executed a promissory note whereby it promised to pay the debtor the sum of $1,368,630 in repayment of a loan.

19. Plaintiff is informed and believes that, according to the terms of the note, the full amount of the indebtedness became due at some time prior to the Petition Date and no legally cognizable excuse exists for a failure or deferral of payment.

20. No portion of the indebtedness has been repaid.

21. The sum of $1,368,630 is now due and payable plus interest as set forth in the note or, if no rate of interest is specified in the note, at the legal rate from the date that repayment was due.

22. Plaintiff is entitled to a judgment in the sum of $1,368,630, plus interest, against both the CLI and Hooper. Plaintiff is further entitled to an award of attorney's fees if the promissory note so provides.

### IV.

### SECOND CLAIM FOR RELIEF

### (Account Stated)

### (Against Defendants CLI and Hooper)

23. Plaintiff refers to the allegations set forth in paragraph 1 through 16 hereof and incorporates said allegations herein as if fully set forth hereat.

24. CLI is indebted to the debtor as a consequence of money loaned to it by the debtor. The debtor has stated that this amount is $1,368,630 and that it is all due and payable.

25. CLI has acknowledged that the amount of $1,368,630 is due and payable to the debtor

1 and has promised to pay it.

2  26. CLI has not paid the amount that it has acknowledged it owes.

3  27. Hooper is responsible for the debts of CLI.

4  28. CLI and Hooper owe the sum of $1,368,630 to the debtor, which sum is due and
5 payable.

6  29. Plaintiff is entitled to a judgment against CLI and Hooper in the sum of $1,368,630
7 plus statutory interest from the date that CLI promised to repay the account.

## IV.

## THIRD CLAIM FOR RELIEF

**(To Avoid Fraudulent Transfers - 11 U.S.C. §§ 105, 541, 548, and California Civil Code §§3439 et seq.)**

**(Against Defendants CLI, Hooper, and Does I through XV)**

 30. Plaintiff refers to the allegations set forth in paragraph 1 through 16 hereof and incorporates said allegations herein as if fully set forth hereat.

 32. In causing the debtor to make payments to or on behalf of himself, CLI, Does I through XV, Hooper caused the debtor to transfer funds without receiving reasonably equivalent value in exchange.

 33. The effect of these payments was that the value of the remaining assets of the debtor were unreasonably small in relation to its known and reasonably anticipated debts as they existed at the time of the payments and as they could expect to arise from the businesses it was conducting. The payments thereafter rendered the debtor incapable of paying its debts as they fell due.

 34. Hooper caused the debtor to make the payments with the actual intent to hinder, delay, and defraud the debtor's creditors.

 35. Plaintiff is entitled to a judgment avoiding the transfers of funds and/or a money judgment against defendant equal to their value.

 36. With respect to the foregoing transfers, defendants acted willfully and with the intent of injuring and defrauding the debtor and its creditors. As such, plaintiff is further entitled to an

award of exemplary and punitive damages against defendants, and each of them, according to proof.

## V.

## FOURTH CLAIM FOR RELIEF

### (To Avoid Insider Preferences - 11 U.S.C. §§ 105, 541, 547)

### (Against Defendant Hooper)

37. Plaintiff refers to the allegations set forth in paragraph 1 through 16 hereof and incorporates said allegations herein as if fully set forth hereat.

38. Hooper was an "insider" of the debtor within the meaning of 11 U.S.C. § 101(31) (b).

39. To the extent that payments made by the debtor to Hooper or on his behalf during the year preceding the bankruptcy filing were on account of a debt that the corporation owed to him, the payments were for a debt that was antecedent to the payments. They were made at a point when the debtor was insolvent and they enabled Hooper to receive more than he would receive from a distribution in the within bankruptcy.

40. Said payments did not involve a contemporaneous exchange for value and were not on account of a debt incurred in the ordinary course of business.

41. Plaintiff is entitled to a judgment avoiding the payments and/or a money judgment against defendant equal to their value.

## VI.

## FIFTH CLAIM FOR RELIEF

### (For Breach of Fiduciary Duty)

### (Against Defendant Hooper)

42. Plaintiff refers to the allegations set forth in paragraph 1 through 16 hereof and incorporates said allegations herein as if fully set forth hereat.

43. In his capacity as an officer, director, and controlling shareholder of the debtor, Hooper owed a fiduciary duty to the debtor to act with the utmost good faith and in the best interests of the debtor. He had a duty to refrain from transactions which were unfair to the debtor and which

deprived it of its ability to meet its obligations as they fell due.

44. In causing the debtor to make payments to or on behalf of himself, CLI, and Does I through XV, without receiving reasonably equivalent value, Hooper breached his fiduciary duty to the debtor.

45. Said breach of fiduciary duty caused damage to the debtor in that it could not meet its obligations as they fell due.

46. Plaintiff is entitled to an award of compensatory damages in an amount according to proof.

47. Defendant Hooper breached his fiduciary duties willfully and with the intent to injure and defraud the debtor. As such, plaintiff is entitled to an award of exemplary and punitive damages against defendant Hooper, according to proof.

## VII.

## PRAYER

WHEREFORE, Plaintiff prays for judgment as follows:

**ON THE FIRST CLAIM FOR RELIEF:**

For a judgment against defendants CLI and Hooper in the sum of $1,368,630, plus interest as provided in the note or statutory interest, and an award of attorney's fees if the promissory note so provides.

**ON THE SECOND CLAIM FOR RELIEF:**

For a judgment against defendants CLI and Hooper in the sum of $1,368,630, plus statutory interest from the date that CLI promised to repay the account.

**ON THE THIRD CLAIM FOR RELIEF:**

For a judgment against defendants Hooper, CLI, and Does I through XV for a judgment avoiding the transfers of funds made to them and/or a money judgment against them equal to their

value, and for an award of exemplary and punitive damages against defendants, and each of them, according to proof.

**ON THE FOURTH CLAIM FOR RELIEF:**

For a judgment against defendant Hooper avoiding the insider payments and/or a money judgment in the amount of the payments.

**ON THE FIFTH CLAIM FOR RELIEF:**

For a money judgment against defendant Hooper in an amount according to proof and for an award of exemplary and punitive damages against him according to proof.

**ALL CLAIMS FOR RELIEF:**

    1.    For costs of suit; and

    2.    For such other relief as the Court deems just and proper.

Dated: January 30, 2018

DUMAS & KIM, APC

By: _____
James A. Dumas,
Attorneys for Plaintiff and Chapter 7 Trustee,
Carolyn A. Dye

COMPLAINT ON PROMISSORY NOTE; ACCOUNT STATED; TO AVOID FRAUDULENT TRANSFEERS AND INSIDER PREFERENCES; FOR BREACH OF FIDUCIARY DUTY

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>CAROLYN A. DYE, Chapter 7 Trustee | **DEFENDANTS**<br>JAY HOOPER; an individual; CROWN LABORATORY, INC., a California corporation, and DOES 1 through XV |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>DUMAS & KIM, APC., James A. Dumas 3435 WIlshire Blvd., Ste. 990, Los Angeles, CA 90010 Tel: 213/368-5000 Fax: 213/368-5009 Email: Jdumas@dumas-law.com | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor   ☒ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

COMPLAINT TO ENFORCE PROMISSORY NOTE; FOR ACCOUNT STATED; TO AVOID FRAUDULENT TRANSFERS AND INSIDER PREFERENCES; FOR BREACH OF FIDUCIARY DUTY [11. U.S.C. §§ 105, 541, 542, 547, 548, and 28 U.S.C. §157, and California Civil Code Sections 3439 et seq.]

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ According to Proof |
| Other Relief Sought | |

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>TEMPLE, CB, LLC. | | BANKRUPTCY CASE NO.<br>2:17-bk-10301-BR | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central | | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Honorable Barry Russell |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE<br>January 30, 2018 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>James A. Dumas | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.